Okay, Mr. Parrish, Maglana v. Celebrity Cruises. May it please the Court, Counsel Philip Parrish and to my left, Raul Delgado, trial counsel on behalf of the plaintiff's appellants. We are here on a de novo review of the order dismissing two claims. With the Court's permission, I'd like to focus the oral argument on the false imprisonment claim. However, if the Court would like to discuss the intentional infliction of emotional distress, what appears to be a unicorn claim, I'd be happy to answer any questions about that. We're an admiralty, right? And although to the extent that false imprisonment is not a traditional admiralty tort, we often will borrow from state law, but we're not bound necessarily by the forum's law. We look to the general common law, right? Yes. And, you know, just looking at every state I could find, it looked to me like the without lawful authority really is an element of the claim virtually everywhere, not a defense. Well, so the restatement second says that the elements are an act intending to confine another within fixed boundaries. So I actually did the same thing that the Chief Judge did. I even created a fancy chart doing it. And I looked at every state that I could find, and I only found two states that adopted wholesale the restatement. It seemed like every other state, so nine did the restatement, did essentially Florida's test, where it sort of modified the restatement to add unlawfulness. And then 35 sort of has a hybrid test. But I read 44 states as having some sort of unlawfulness as an element there. How is that not, if we're like taking an assessment of what the zeitgeist of the common law is, how is that not part of the common law? Suppose it depends on how you define unlawful. I mean, do you have to have a statute, a specific statute that has been offended? Well, let's one thing at a time. Can we agree then that unlawfulness is a required element? And once we get there, then we can see what you have to allege. But I think we need to establish that first. And again, so my question to you is this. If I'm right that 44 of the 50 states have unlawfulness as an element, can we say that if we're to sort of take an assessment or a temperature of the common law right now that that is an element? I would say yes, but that unlawfulness is essentially subsumed within the notion of being held against your will. In the Barnes & Noble case, Johnson v. Barnes & Noble case. Are you held against your will when you're in prison after a lawful conviction? I don't think that anyone is necessarily signing up to be there. One does not connote the other necessarily. Well, when you are otherwise free to leave, and in this case, our clients were terminated. There's a reason why those are separate elements is the point. So let's assume for the moment, I think I heard you say yes, and then there was some other stuff after that. But let's assume for the moment that it's an element. Where's the, I know that you have the incantation of this was unlawful. And I think there's even a reference to some sort of general international maritime law. But where's the plausible allegation, which is the requirement under Iqbal and Twombly to show unlawfulness, especially where there's all these allegations regarding no sale orders for the CDC, and what frankly is our common sense at this time that we were in pretty kind of extraordinary times? No question. No question that COVID is a big issue in this case, and that the COVID defense is a great defense. They're going to have a nice defense, depending on how the facts play out. I guess that's why these first questions from the chief judge were so important, because it's not really a defense. It is an element for you to show unlawfulness. And part of the unlawfulness is to show that there wasn't a legal authority requiring that this be done at a particular moment or not, or at least you plausibly alleging what that unlawfulness is. Well, and that's why we alleged in the complaint that they were permitted to repatriate. And we cited to the very document they then utilize in their motion to dismiss, which is the attestation that the CDC has said, you may do this under these circumstances. There's no doubt that it could have been done. But the question of unlawfulness is that they were violating the law by holding them for some reason. I mean, because the obvious inference is, while you were able to do it, they did do it within about, it looks like April 23rd is when the form came out, April 15th is when the April order came out, and it was May 22nd. So within 30 days, they got their act together to do all these things that seemed to be very difficult to do during the pandemic at that point. And so I just looking at the plausibility of it, how does that plausibly allege unlawfulness? The unlawfulness comes from the fact that they're being held against their will without, now if there had been a congressional act or even a CDC order under color of federal law that thou shalt not, cruise lines, thou shalt not. But counsel, this gets back to the question that Judge Grant and Chief Judge Pryor asked you. There's lots of people who are held against their will that are not done unlawfully. Those are different things. So how do we, how do we plausibly show unlawfulness from your complaint, from the allegations of your complaint? So they are discharged on March 30th, these two gentlemen. So they, under their contract, they're supposed to be repatriated. Now cruise line says we couldn't do that. We say at least as of April 23rd, and that's why we actually allege the document that gives them the permission to do so. After that, so they can't say there was, we were completely prevented as a matter of law. The cruise line even then would have to certify compliance with a protocol from the CDC, right? Certainly, and which they did when they eventually did this.  Yeah, but I mean, we don't have any factual allegations to show that they could have done it any sooner. Well we have factual allegations that they were more interested in their own bottom line than in getting this done, and that they, yes, that they were. Tell me what paragraphs you're referring to when you say that you allege that. Well, I think it's the paragraphs concerning their, I believe it's around paragraphs 48 to 52, but the point being that there was no law that said they could not do this. We have, these gentlemen had a right to be repatriated, to be free, unless there is a law that says that they cannot be. The issue about whether it was done timely enough, that's, false imprisonment is always about duration, how long was it reasonable? It would have been unlawful for them to do it without complying with the protocol, right? Well, certainly, but we don't know any of the facts about whether they complied timely or not. We do know from the- Do we have to allege that? I guess that's the question is, don't you have to, sorry, go ahead. Yeah, that's exactly right. That's under the reasonableness of whether they did it in a timely fashion, and we did allege that they were held, you know, they were promised that they had flights, that they would be leaving- They kept being rescheduled, and that's perfectly understandable in the context of the pandemic where there wasn't much flying and traffic going around. In other words, the plausible allegation from that seems to be that they actually were trying to get it done, but were having trouble scheduling the flight. I just, where is the allegation that, they're certainly alleged they could have done it starting on April 23rd, where is the plausible allegations that they were able to do it for everybody they had, because remember, your clients were part of what I understand to be 7,000 that were in the same, no pun intended, boat at the time that this was going on. Yes, well, yes, and actually, obviously, many boats and different cruise lines, and the notice of supplemental authority that Mr. Bellows filed yesterday that showed when they were actually repatriated shows that a month earlier, seven days after the CDC attestation clause went into effect, Norwegians sent 800, 788, almost 800 home within seven or eight days. The issue, so all these are getting into facts. We are alleging that we are the right to be free, that Barnes & Noble, again, is the right to be free, and unless there is an absolute right, or if it's not absolute, then you get into facts. You get into whether or not it was reasonable under the circumstances, and that's an affirmative defense. Can I ask you a question? So, as I understand the form that had the attestation, one of the requirements, both under the April no-sale order and the attestation itself, they had to show that the people that they were allowing to disembark were asymptomatic at the time, right? That was one of the requirements? Right. That's at docket entry 55-1 of our docket, or I'm sorry, the docket below. Right. You're, you allege in the complaint that your clients were actually, because of their conduct, the conduct of the air, of the cruise line, actually exposed to COVID by going ship to ship and by being transferred and by being put it there and improper protocols. Doesn't that lead to the fact that there can't be an attestation right away of their being, of the, of your point, your clients being asymptomatic at the time? We have no earthly idea, Judge. Look, we have no idea. The universe of facts that are not known about this case is tremendous. I know, but under Iqbal and Twombly, there's a requirement that there be a plausibility to allege the essential elements. Here, assuming an essential element is unlawfulness and assuming that the April order is what we have to look at, and here's what the April order says on the relevant issue. This is as best as I can tell under the April order, and it's number one under the wherefore clause. Cruise ship operators shall not be allowed, shall not be allowed to disembark passengers and crew members at ports or stations except as directed by the USCG in consultation with HHS and CDC personnel and as appropriate as coordinated with federal, state, and local authorities. That coordination was through the attestation requirement, and the attestation requirement had certain things. There had to be a booked flight. It had to be a done private charter. They couldn't have contact with anyone. One of those requirements is that the people disembarking be asymptomatic, right? We have no proof that our clients or any of the other people were symptomatic. I know, but don't you have to allege that? We have to allege that they... So let's assume that there had been no COVID, and our clients were kept for 60 days after their contracts were up. By the way, Mr. McGlennan's contract would have been up April 16th if he hadn't been terminated. Clearly, we've stated a claim because it's unlawful to keep somebody there if you don't have a reason. So then we get into, they've got a reason, their reason, they say, is COVID and this attestation. Again, I'll take that defense into a jury depending on how the facts play out. I've got a question that I think backs up to all of this, which is, I think personally you've got a better chance at a claim if you're operating under the restatement. But it seems to me that this has been litigated under Florida law, and you've kind of sprinkled in some concepts from the restatement. Why should we decide this under anything but Florida law, given that that's how the parties seem to have litigated this the whole time? I don't know that it was litigated under Florida law. There were, I believe the Skokie case was... Let me suggest an answer to you, because we're sitting in Admiralty, and we're not going to define the general maritime law based on a single state's law. Obviously we are not going to do that, but we've adopted Florida law in many cases in many instances in these admiral cases. Very sloppily, I might add. Typically it's a restatement, as in Carroll and Frans and other cases in this. We should be careful about this. This is something I care about. When we state with the general maritime laws, we say we're going to borrow, and we just borrow a single state's law, and we're suggesting that state supplies the rule for the general maritime law. Right. Sometimes it's a remedy because that state has the most connection to the case, but we understand that. It's the same thing we've done in malicious prosecution and false arrest under 1983. We borrow from a contemporary single state's law, and we screw up all kinds of precedents. There is no right to keep these people on the ship except for the fact that we have COVID and this attestation clause. Those are issues that then we need to get into. I think we understand your argument. You saved four minutes, Mr. Parrish. Let's hear from Mr. Bellows. Good morning, judges. May it please the court, Christopher Bellows on behalf of the Appalachian Celebrity. I'm here with Scott Ponce, co-counsel. I wanted to speak to the fact that the complaint did allege that it was unlawful and didn't cite real evidence. In a conclusory way. Conclusory way. There's no facts to really give us anything to go on. Correct. It also brought into the complaint all of these CDC orders because it referenced the CDC orders about 10 different times in the complaint. So the CDC orders are fair game. It's as if they were pleaded in the complaint. And the CDC orders say that keeping the crew members- I wonder whether we could even, I mean, we don't have to worry about it because it is alleged in the complaint, but we could probably take judicial notice of the CDC orders. Correct. And when you go with the CDC orders and every single one that is before the court right now, it says you cannot disembark the crew members. They were looking at, as we talked about COVID. Yeah. I mean, it looks to me like once you get up to April 23rd, all that's true. The question is what, what happened between April 23rd and April 26th, but they don't really have anything to, they don't allege anything to establish that there was anything unlawful in that period. Correct. And the April 23rd order or regulation from the CDC, it still says that even if you meet all the requirements of the attestation, you still need to get permission from the CDC to disembark the crew. So at every step, you have to have that final approval from the CDC. And we know that the approval on this ship for the Philippine crew did not happen until May 22nd and they were repatriated four days later. What do we do with allegation? And your co-counsel was, I think, trying to refer to this when he was up here. Allegation 42. This is at page 11 of the complaint quote, but why would the cruise line? And specifically defendant delay repatriation of the crew. The answer as is usually the case with the cruise industry comes down to dollars and cents profits are far more important than a replaceable crew member. And if someone doesn't like it, there's an eager replacement that will gladly accept off an offer to work on a ship that would pay them over $1,200 a month for 75 hours of work for work week as an average on an average of six to nine months. Is that not an allegation that the decision was made not to comply with the CDC order? Not because they couldn't or they were doing their best and they were working on it, but instead because they chose to look at the bottom line. Let's step back. Their claim, they stipulated that their claim is only during the days they weren't getting paid. That's not false imprisonment. That is- We're talking about the chief- The allegation. The allegation. Counsel, counsel. The chief judge is exactly right. We're talking about the period from April 23rd when they were allowed to do it until I think May 22nd or 26th when they ultimately were repatriated. That's the period we're talking about. So as to that period, they were allowed off the boat. If you checked all these boxes, they had to attest to this stuff. Why is that allegation not sufficient? And I'm not saying it is, I'm asking, why is that allegation not sufficient to overcome that this was done not for any, because of any law, legal requirements, but instead because they didn't feel like paying to fly all these people back to their homes? I think that would be a different cause of action. The fact that money may have been an issue still doesn't get you past the CDC. You have to have permission from the CDC. You have to do all these things- But if they slow rolled, I agree with you, but if they slow rolled the permission because they didn't feel like paying for all the money or they were waiting for cheaper flights or whatever, as opposed to we're doing our best, we're doing all we can, why is that not sufficient to show that they, this was in fact unlawful as opposed to doing our best and trying to comply with the law? See, I don't think, it doesn't make it unlawful. It makes it maybe negligent, it maybe, there's a misrepresentation of- No allegation that the delay in and of itself would make it unlawful, is what you're saying. The delay does not make it unlawful. The delay may make it some other kind of action. And that's why- At what point would it become unlawful, right? If they were still on the ship right now, then obviously I think we would agree that that would be unlawful, correct? Right. So what's your turning point for when that became unlawful as opposed to challenging? Well, one of the reasons I did, we decided the approvals, the approvals, and I gave you the approvals through June 3rd. If you went to the approvals through late December 2020, I mean, there are hundreds of other ships that got approvals way after Celebrity, way after Celebrity. If you look at the total picture, Celebrity's approvals came relatively early, maybe not as early as maybe 100 other ships, but there are 100, 100, 200 others that were way after that. I'm confident that's outside the record. Well, if it's a CDC order or CDC documents- The CDC orders, again, I think we could take judicial notice of, but how that played out with respect to other cruise lines doesn't. Now, that sounds like a factual record that we don't have before us. Okay. I agree with you. I agree with you that if, for example, if they had been tied up on the ship, they'd been handcuffed on the ship, that's different. If they had been starved, that might be different. If there was some sort of just dragging it out for some unreasonable amount of time, maybe that's different. Why wouldn't that be a question of fact that both sides, once you move past this stage, would put in evidence and then either at summary judgment or before a jury, that determination would be made? I think because at the end of the day, you had to have permission and you had to have the attestation. You had to go through all of the hoops. And we know just using common sense, that all of those hoops are gonna take more than five days. We're talking from April 23rd to May 22nd, which is when they got the approval. That's not a long time to do all these things that you need to do for 227 people. And also, you need to look at the CDC order and what the goal was and what the concern was. The concern was that if you let one person out, one crew member out who may be infected, you could kill hundreds of people. And that's all throughout those CDC orders. That their biggest concern was these cruise ships where we're housing these crew members, there is a serious concern that anybody walking off that ship can infect a neighborhood, can infect a community, can infect a whole village. So there was intense concern in these CDC orders that we have to be very careful before we let anyone off these ships. And they were using these ships to house the crew members during this time. So I think you would just have to use common sense, looking at the CDC orders, reading the CDC orders, and determining- I mean, we're here on a motion to dismiss. Right. We're about to evaluate the plaintiff's allegations and whether the plaintiff stated a claim. And isn't it enough to say, Mr. Perish, Mr. Bellows, I'm sorry, that the problem here is we don't have really anything in terms of facts alleged in the complaint to allege that anything that was happening between April 23rd and May 26th made it illegal. Correct. Correct, Judge. If there are no other questions, I'll sit down. Thank you, Mr. Perish. Thank you. We ask that the court affirm the judgment. Mr. Perish, you have four minutes. Judge Luck, to your point, yes, that was one of the paragraphs that I was looking at. Paragraph 40 through 50 are numerous allegations that the cruise line was looking at its bottom line and not acting fast enough. We know if there had been no COVID, no order, you cannot keep people on the vessel that aren't your employees any longer. It's against their will. But if the CDC repatriation protocol makes it illegal for them to release them sooner than if the protocol has been satisfied, I don't know what there's alleged here, what facts, plausible facts are alleged here that would allow an inference that the failure to release these crew members was unlawful. You took too long to do it, that you were not really concerned about the CDC but about your bottom line and that it was unreasonable under the circumstances. What law does that violate? It's a tort claim. So once you, they don't have a silver bullet here. The element of the tort claim is that it was unlawful. I'll go back and start again. If they could not, by law, because of the CDC protocol, release them until that protocol had been satisfied, what facts are alleged that in the interim that whatever happened that kept those crew members aboard the vessel was unlawful? Facts that are alleged are that the cruise line took too long to release them, that they were permitted to release them as of April 23rd and that when this complaint was filed on June 1st, this was the amended complaint, that they had basically foot dragged, I mean, paragraphs 40 through 50 talk about them taking too long. I mean, the issue about, I mean, you said if the CDC didn't permit them. Well, the CDC did permit them as of April 23rd. So then we get into the weeds of the facts of whether or not... Not unless they satisfied the protocol, right? Yes, but we don't know how long that took them. We do know from what was filed yesterday by Mr. Bellows that Norwegian... We don't have any facts about it. ...did it three weeks earlier. Yeah. No, we don't live under the Conley standard anymore. Respectfully, I believe we make Iqbal Twombly in this case by alleging that they took too long and then there's not been a deposition taken or an affidavit filed. Just we did look at this onerous burden. Well, other cruise lines did it faster. That's for a jury to determine or the court at a summary judgment after there's been at least a deposition taken, after there's been affidavits filed to talk about. I mean, it could end up that we'll look at this and see that this was just like the Apollo 11 movie and they were like the people in Houston who were working on, you know, no sleep and coffee and cigarettes and working around the clock to get this done. Or maybe they weren't. Maybe these other cruise lines that got it done much quicker, maybe that's something to determine whether or not it was reasonable, whether or not they really were. And what law did they violate if they weren't going doing it around the clock drinking coffee? If they didn't act reasonably under the circumstances, they are with, they are keeping our clients on the vessel for a reasonable amount of time because their right to be free. I mean, it's just like in Barnes and Noble, the gentleman was kept for one to two hours in the case that it cited from the first DCA was 25 minutes. I mean, these issues are factual duration, reasonable attempts to comply or not comply with the law. So we think under the circumstances we have pled under the Equivalent Twombly standard, we would ask the court to reverse remand, at least on the false imprisonment claim. And we thank you for your time this morning. Thank you. We'll be in recess until tomorrow.